UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| MARQUISE HARRIS, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) No.: 1:19-CV-106-TAV-SKL |
| TDOC COMMISSIONER TONY PARKER, UNIT MANAGER JACKIE RATHER, WARDEN MIKE PARRIS, GRIEVANCE CHAIRPERSON SPURLING, and STATE OF TENNESSEE, | ) ) ) ) ) ) |
|     Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Now before the Court is a prisoner's pro se amended complaint for violation of 42 U.S.C. § 1983, in which Plaintiff asserts claims for failure to protect him from other inmates and for failure to properly process a grievance [Docs. 5, 6, and 6-1], for screening pursuant to the Prison Litigation Reform Act ("PLRA"). For the reasons set forth below, only Plaintiff's claim for injunctive relief arising out of his allegation that Defendant Unit Manager Rather violated his constitutional rights by not reasonably addressing his allegations that a fellow inmate had threatened Plaintiff's life, had a knife, and had tampered with his own cell door in a manner that allowed him to open it from within in a manner that created an ongoing threat to Plaintiff's safety will proceed in this action.

**I. SCREENING STANDARD**

Under the PLRA, district courts must screen prisoner complaints and dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a

defendant who is immune. *See, e.g.,* 28 U.S.C. § 1915(e)(2)(B); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir.1997). The dismissal standard the Supreme Court articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial PLRA review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). As such, formulaic and conclusory recitations of the elements of a claim are insufficient to state a plausible claim for relief. *Id.* at 681. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him of a federal right. 42 U.S.C. § 1983.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that he sent two information request forms with letters to Defendant Unit Manager Rather stating that his personal safety was in danger because an inmate who had possession of a knife and had the ability to open his own cell door had threatened to stab Plaintiff if Plaintiff came out of his cell in full restraints [Doc. 5 p. 4]. Plaintiff requested a search of the inmate's cell, that the inmate's cell door be secured, and separation from the inmate, but he received no response [*Id.*]. Plaintiff subsequently spoke

2

Case 1:19-cv-00106-TAV-SKL   Document 8   Filed 05/20/20   Page 2 of 13   PageID #: 176

with Defendant Unit Manager Rather about this issue, but this Defendant "refused to acknowledge such breach of security or that Plaintiff's safety was at risk" [*Id.*].

Plaintiff asserts that this threat to his safety resulted from several factors, including the following:

(1) Jail officials' failure to provide effective locks on high security cells;

(2) Jail officials' failure to supervise "high security inmate rockmen" and to secure their cell doors which allows them to tamper with the defective locks;

(3) Jail officials' failure to supervise high security inmate center core workers which allows them to pass knives to other inmates;

(4) Jail officials' failure to secure the pod before moving inmates in full restraints even when only one officer is escorting the restrained inmates;

(5) Jail officials' failure to confiscate all tools in possession of high security inmates and the weapon in possession of the inmate who threatened Plaintiff;

(6) The jail grievance chairperson's failure to properly process his grievance;

(7) Jail officials' retaliation against him for filing grievances and lawsuits; and

(8) Defendant Unit Manager Rather's failure to conduct unannounced rounds of the pod at least once during his shift.

[*Id.* at 4–6].

Plaintiff also sets forth a number of facts regarding incidents in May and June 2020, after he filed his original complaint, that he asserts support his claims and the relief that he seeks in the memoranda he filed with his lawsuit [Docs. 6 and 6-1].[1] Specifically, Plaintiff

---

[1] Plaintiff also states in these filings that he has filed subpoenas with his complaint, but no such documents are in the record. Even if they were, however, they would be premature, as no Defendant has answered the complaint, and nothing in the record suggests that Plaintiff could not obtain the materials he requests through discovery.

3

states that on May 6, 2019, several inmates claimed to have opened their own cell doors from the inside [Doc. 6 p. 4–5]. Also, on May 16, 2019, an officer let an inmate out to be a "rockman" and did not secure that inmate's cell door, at which time the inmate tampered with the lock in a manner that allowed him to open it from the inside [*Id.* at 5]. Additionally, on May 21, 2019, an officer allowed inmate kitchen workers to leave their work area, which allowed those inmates to pass contraband to other inmates [*Id.* at 6]. Further, on May 4, 2019, an officer ran showers by himself, even though two officers are supposed to escort inmates in their full restraints [*Id.*]. Also, high security inmates can order tools that can cut metal, and Plaintiff believes that some inmates have tried to use these tools to make knives, though he is unsure if they were able to do so [*Id.* at 6–7]. Plaintiff additionally asserts that on May 22, 2019, two officers not named as Defendants threatened to beat him for his lawsuits and that on June 6, 2019, two unnamed officers harassed him for his pursuit of legal actions [*Id.* at 7–8].

Plaintiff additionally claims that he filed an emergency grievance on May 7, 2019, regarding threats to his safety, but Defendant Spurling refused to respond to that grievance in retaliation against him for previous lawsuits and grievances and did not allow Plaintiff to appeal [*Id.* at 2, 8; Doc. 5-3].

Plaintiff then sets forth a mix of legal arguments and additional factual allegations in support of his claims. First, Plaintiff alleges that Defendants Warden Parris and TDOC Commissioner Parker and other unnamed jail officers and employees have failed to provide "specific levels of security" in violation of TDOC policy and the Eighth Amendment and

4

that this requires criminal prosecution of them [Doc. 6 p. 9–10]. According to Plaintiff, TDOC policy requires the shift commander/unit manager to conduct unannounced rounds of inmate living and activity areas at least once during a shift to detect breaches of security and Defendant Unit Manager Rather's failure to do so when inmates must be moved while in full restraints and unsupervised inmates tamper with their cell door locks and pass on contraband, including knives, from their workplaces to other inmates is a violation of his constitutional rights [*Id.* at 10–14].

Plaintiff next claims that Defendant Union Manager Rather's failure to do an unannounced strip search and/or cell search of the inmate that Plaintiff accused of having a knife within a reasonable time and failure to do "frequent unannounced cell searches" in accordance with TDOC policy was a neglect of duty that allowed the inmate to keep the weapon and put Plaintiff and others at risk, as other inmate stabbing also happened on May 27, 2019 [*Id.* at 14–17]. Later, Plaintiff also asserts that Defendants TDOC Commissioner Parker does not make monthly visits to the facility to determine whether it is complying with TDOC policies, that Warden Parris "is not examining [] the affairs of the building to assure that proper standards are maintained," and that other unnamed officers are not following TDOC policy and thereby allowing breaches of security that place Plaintiff and other inmates in danger [Doc. 6-1 at 20–21].

While Plaintiff acknowledges that inmates do not have an inherent constitutional right to an effective grievance procedure, he alleges that the TDOC grievance policies have created a liberty interest in the inmate grievance procedure and that Defendant Grievance

5

Chairperson Spurling therefore violated his right to due process by not properly processing his grievance regarding the security risks or allowing him to appeal it [Doc. 6 p. 18–23; Doc. 6-1 p. 1–5]. Plaintiff further asserts that this was an abuse of power and "basically" retaliation for his previous lawsuits and grievances because other officials had harassed and/or threatened him for this behavior [Doc. 6-1 p.5].

Plaintiff requests a jury trial on the substantive claims in his complaint and seeks three-hundred and seventy-five thousand dollars, criminal prosecution of Defendants, and release from his high-security housing unit [Id. at 5–22].

## III. ANALYSIS

### A. Defendants TDOC Commissioner Parker and Warden Parris

Plaintiff has not set forth facts from which the Court can plausibly infer that Defendants TDOC Commissioner Parker and Warden Parris may be liable under §1983 for a violation of his constitutional rights. Specifically, as set forth above, Plaintiff's only specific allegations against these supervisory officials are that (1) Defendant TDOC Commissioner Parker has not made monthly visits to the prison; (2) Plaintiff sent Defendant TDOC Commissioner Parker a letter about the risks to his safety; and (3) Defendant Warden Parris "is not examining [] the affairs of the building to assure that proper standards are maintained."

However, liability under § 1983 cannot be based on the defendant's position as a supervisor or knowledge of a prisoner's complaint or grievance, but rather "must be based on active unconstitutional behavior." *Sheehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)

6

(finding that knowledge of a prisoner's grievance and a failure to respond or remedy the complaint was insufficient to impose liability on supervisory personnel under § 1983); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). Plaintiff provides no facts to support a finding that these Defendants authorized, approved, acquiesced, or directly participated in any violation of his constitutional rights as required to state a claim against them for violation of §1983. *Harvey v. Campbell Cty.*, 453 F. App'x. 557, 563 (6th Cir. 2011) (citations omitted); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (finding that a complaint alleging that a warden and a TDOC commissioner had failed to enforce TDOC policies failed to state a claim upon which relief may be granted under § 1983).

Thus, the complaint fails to state a claim upon which relief may be granted under §1983 as to these Defendants.

### B. Defendant State of Tennessee and Official Capacity Claims

Plaintiff has named the State of Tennessee as a Defendant in this action. However, the Eleventh Amendment generally bars suits brought against states, regardless of the relief sought. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–02 (1984); *Lawson v. Shelby Cty., Tenn.*, 211 F.3d 331, 335 (6th Cir. 2000) (providing that "the [Eleventh] Amendment prohibits suits against a 'state' in federal court whether for injunctive, declaratory or monetary relief"). Thus, "absent waiver or valid abrogation,

7

federal courts may not entertain a private person's suit against a State." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253–54 (2011).  The State of Tennessee has not waived its Eleventh Amendment Immunity, s*ee Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986), and Congress has not abrogated Tennessee's Eleventh Amendment immunity.  *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017).  Thus, any claims against the State of Tennessee are barred by the Eleventh Amendment.

Also, Plaintiff does not specify in his amended complaint whether he has sued the individual Defendants in their individual or official capacities.  However, to the extent that Plaintiff sued any individual Defendant in his official capacity for injunctive relief due to an ongoing constitutional violation and such claims may fit in the exception to Eleventh Amendment immunity set forth in *Ex Parte Young*, 209 U.S. 123 (1908) which "allows plaintiffs to bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations," but "does not extend to retroactive relief or claims for money damages," *Boler*, 865 F.3d at 412, such claims are still effectively against the State of Tennessee and therefore require Plaintiff to establish that a custom or policy of the entity employing the individual caused a constitutional violation.  *Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985).  However, none of Plaintiff's allegations allow the Court to plausibly infer that any custom or policy of the State of Tennessee caused any ongoing violation of Plaintiff's constitutional rights.

As such, Plaintiff's claims against the State of Tennessee and any individual Defendants in their official capacity will be **DISMISSED**.

## C. Grievance

While Plaintiff correctly acknowledges that he has "no inherent constitutional right to an effective prison grievance procedure," *Argue v. Hofmeyer,* 80 F. App'x 427, 430 (6th Cir. 2003), he asserts that Defendant Grievance Chairperson Spurling's failure to process his grievance violated his due process rights because TDOC's policies regarding grievances create a liberty interest in resolution of grievances and/or was retaliation for Plaintiff's act of filing previous grievances or lawsuits.

However, nothing in Plaintiff's complaint allows the Court to plausibly infer that TDOC's grievance policies place substantive limits on jail officials' discretion in handling grievances such that they could create such a liberty interest therein. *Olim v. Wakinekona,* 461 U.S. 238, 249 (1983). Accordingly, this allegation fails to state a claim upon which relief may be granted under § 1983 and will be **DISMISSED**.

As to Plaintiff's claim that Defendant Spurling's failure to process his grievance amounted to retaliation, such a claim requires a plaintiff to demonstrate that (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). However, a prisoner's subjective belief that he has been retaliated against is insufficient to state a claim. *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997).

9

Plaintiff's act of filing a grievance regarding the security issues in his pod was clearly protected conduct.[2] However, Defendant Spurling's response the grievance at issue states on its face that Defendant Spurling returned the grievance to Plaintiff because he (1) interpreted it to grieve classifications issues that were inappropriate for the grievance process under TDOC policy; (2) believed it was untimely; and (3) found that it failed to provide information required by the Inmate Handbook [*Id.* at 2]. Moreover, contrary to Plaintiff's assertions, Defendant Spurling's response to the grievance specifically states that Plaintiff could appeal the return of the grievance [*Id.*].

Regardless, even if the Court assumes that Defendant Spurling's initial denial of Plaintiff's grievance for the reasons set forth therein could prevent a person of ordinary firmness from continuing to engage in protected conduct, Plaintiff has not set forth any specific facts to support finding that Defendant Spurling's return of this grievance was retaliatory. While Plaintiff states that other jail officials have harassed or threatened him regarding his filing of legal actions, nothing in the amended complaint connects those actions with Defendant Spurling. Wholly conclusory allegations of retaliation are insufficient to state a plausible claim for violation of § 1983. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987).

Thus, Plaintiff's allegation that this grievance was denied for retaliatory reasons will be **DISMISSED**.

---

[2] Notably, however, Plaintiff filed this grievance after he filed his initial complaint in this matter [Doc. 5-3 p. 7 (dated April 18, 2019); Doc. 1 p. 19 (dated April 15, 2019)]. The PLRA requires prisoners to exhaust all available administrative remedies prior to filing suit under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(a).

### D. Requests for Monetary Damages and Prosecution

Plaintiff also seeks monetary damages for his claims and seeks prosecution of Defendants for their acts underlying his claims. However, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Also, Plaintiff does not allege that he has incurred any physical injury, and prisoners cannot recover for emotional or mental injury resulting from a constitutional violation absent a prior physical injury that is greater than *de minimis*. 42 U.S.C. § 1997e(e) (providing that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury"); *Wilson v. Yaklich*, 148 F.3d 598, 600–01 (6th Cir. 1998) (providing that claims seeking monetary damages for failure to protect in violation of the Eighth Amendment fail absent a physical injury that is more than *de minimis*).. Thus, Plaintiff's requests for monetary damages and prosecution of Defendants will be **DISMISSED**.

### E. Defendant Unit Manager Rather

As Plaintiff's complaint allows the Court to plausibly infer that Defendant Unit Manager Rather may have violated Plaintiff's constitutional rights by not reasonably addressing his allegations that a fellow inmate had threatened Plaintiff's life, had a knife, and had tampered with his own cell door in a manner that allowed him to open it from within in a manner that created an ongoing threat to Plaintiff's safety, this claim for injunctive relief will proceed herein.

11

## IV. CONCLUSION

For the reasons set forth above:

1. Only Plaintiff's claim for injunctive relief arising out of his allegation that Defendant Unit Manager Rather violated his constitutional rights by not reasonably addressing his allegations that a fellow inmate had threatened Plaintiff's life, had a knife, and had tampered with his own cell door in a manner that allowed him to open it from within in a manner that created an ongoing threat to Plaintiff's safety will proceed herein;

2. All other claims and Defendants are **DISMISSED**;

3. The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendant Unit Manager Rather;

4. Plaintiff is **ORDERED** to complete the service packet and return it to the Clerk's Office within twenty (20) days of entry of this order;

5. At that time, the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

6. Service on Defendant Unit Manager Rather shall be made pursuant to Rule 4(e) of the Federal Rules of Civil Procedure and Rule 4.04(1) and (10) of the Tennessee Rules of Civil Procedure, either by mail or personally if mail service is not effective;

7. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packet, this action may be dismissed;

8. Defendant Unit Manager Rather shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If he fails to timely respond to the complaint, it may result in entry of judgment by default; and

9. Plaintiff is **ORDERED** to immediately inform the Court and Defendant Unit Manager Rather or his counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct

address to this Court within fourteen days of any change in address may result in the dismissal of this action.

**ENTER:**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE